RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0315p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____



RODERICO FILADELFO PEREZ-PEREZ,
                *Petitioner*,

*v.*

PAMELA BONDI, Attorney General,
                *Respondent*.

No. 25-3146

On Petition for Review from the Board of Immigration Appeals.
No. A 201 985 731

Argued: October 21, 2025

Decided and Filed: November 21, 2025

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Shanta Driver, DRIVER, SCHON & ASSOCIATES PLC, Detroit, Michigan, for Petitioner. Christina R. Zeidan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Shanta Driver, DRIVER, SCHON & ASSOCIATES PLC, Detroit, Michigan, for Petitioner. Christina R. Zeidan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

    GIBBONS, J., delivered the opinion of the court in which RITZ, J., concurred. McKEAGUE, J. (pp. 12–17), delivered a separate dissenting opinion.

**OPINION**

JULIA SMITH GIBBONS, Circuit Judge.  The Immigration and Nationality Act ("INA") allows the Attorney General to cancel the deportation of an otherwise deportable noncitizen if that noncitizen establishes four preconditions to relief.  *Singh v. Rosen*, 984 F.3d 1142, 1147 (6th Cir. 2021); *see also* 8 U.S.C. § 1229b(b)(1).  The four preconditions to relief are met if the noncitizen demonstrates: (1) continuous physical presence for a minimum of 10 years prior to the cancellation application; (2) he has been a person of "good moral character" during that period; (3) he has no convictions of a disqualifying offense; and (4) he has established that "removal would result in exceptional and extremely unusual hardship to the [noncitizen's] spouse, parent, or child" who is a U.S. citizen or lawfully admitted permanent resident.  8 U.S.C. §§ 1229b(b)(1)(A)-(D).  The INA defines "child" as "an unmarried person under twenty-one years of age[.]" *Id.* § 1101(b)(1).

An immigration judge ("IJ") granted Petitioner Roderico Filadelfo Perez-Perez cancellation of removal under § 1229b(b)(1)(D) in 2020, when his youngest daughter and qualifying "child," Ady Perez-Velasquez, was seventeen years old.  The government appealed, but the Board of Immigration Appeals ("BIA") did not resolve the case until 2025, at which point it determined that Ady was over twenty-one and therefore no longer a qualifying "child" under the INA.  As a result, the BIA vacated Perez-Perez's cancellation of removal and ordered him removed to Guatemala.

Because we now hold that the correct time to ascertain the age of a qualifying "child" under § 1229b(b)(1)(D) on an application for cancellation of removal is when the IJ issues its decision, we grant Perez-Perez's petition for review and reverse the decision of the BIA.

**I.**

Roderico Filadelfo Perez-Perez, a native of Guatemala, entered the United States without inspection in December of 1994.  Perez-Perez settled in Detroit, Michigan, where he remained until he was detained in 2019 by the Department of Homeland Security ("DHS").  Perez-Perez

shares three children with his ex-wife, from whom he was divorced in 2008: Alex Perez, Talita Perez-Velasquez, and Ady Perez-Velasquez.

On August 17, 2019, Perez-Perez was pulled over after he hit a police vehicle stopped on the road in response to an automobile accident. After conducting a breathalyzer exam twice, officers charged him with a DUI for operating his vehicle while intoxicated. Perez-Perez pled guilty to his DUI charge in October 2019 and received a sentence of twelve months' probation. Shortly thereafter, in December of 2019, U.S. Immigration and Customs Enforcement ("ICE") took Perez-Perez into custody and detained him at the Monroe County Jail in Monroe, Michigan.

On January 8, 2020, Perez-Perez appeared for his first removal hearing, represented by counsel, and conceded his removability. At that time, he also indicated that he planned to seek cancellation of his removal under 8 U.S.C. § 1229b(b)(1)(D), naming his youngest daughter Ady as his qualifying relative. In the following months, Perez-Perez's removal hearing was ultimately scheduled for April of 2020.[1]

On April 24, 2020, IJ Jennifer M. Gorland granted Perez-Perez cancellation of his removal. At the time of Perez-Perez's 2020 removal hearing, his daughter Ady was seventeen years old. In reaching her decision, Judge Gorland concluded that Perez-Perez was credible and of good moral character, and that Ady would suffer the requisite hardship if her father was removed from the country. On May 19, 2020, DHS filed a timely notice of appeal of the IJ's decision. The BIA did not issue a briefing schedule for the case until January 1, 2022.

On February 21, 2025, the BIA issued its decision on DHS's appeal. The BIA declined to address the merits of Perez-Perez's case, as raised by DHS in its briefing, and instead sustained the appeal solely on the grounds that Ady was over twenty-one at the time of its decision and therefore no longer a qualifying relative under 8 U.S.C. § 1229b(b)(1)(D). As a

---

[1]On March 31, 2020, prior to his removal hearing, Perez-Perez filed an emergency petition for a writ of habeas corpus, seeking immediate release from the Monroe County Jail. When a nurse at the jail tested positive for COVID-19 two weeks later, Perez-Perez filed an emergency temporary restraining order. On May 9, 2020, the district court granted Perez-Perez's motion and ordered his release, subject to home quarantine requirements. However, Perez-Perez was taken back into ICE custody while his request for an emergency stay of removal, filed on March 18, 2025, was pending with our court and has remained there since. On April 29, 2025, our court denied Perez-Perez's emergency motion for release from detention, finding that first-instance review of his challenge to detention lies within the district court's jurisdiction, not the court of appeals.

result, the panel concluded that Perez-Perez's removal was no longer eligible for cancellation under the INA and ordered him removed to Guatemala.

Perez-Perez filed a timely appeal to our court on March 7, 2025.[2]

## II.

Perez-Perez argues that the BIA erred by reversing the IJ's decision and ordering his removal to Guatemala.  "Where the [BIA] reviews the immigration judge's decision and issues a separate opinion" instead of affirming the IJ's order, we review the BIA's opinion as a final agency determination. *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023) (citation omitted).  We review questions of law de novo.  *See Gutierrez v. Sessions*, 887 F.3d 770, 774 (6th Cir. 2018).  And following the Supreme Court's 2024 decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), we are no longer obligated to defer to the BIA's interpretation of the INA.  *Id.* at 400.  However, "any issues the Board did not address are not before the court [of appeals]."  *See Turcios-Flores*, 67 F.4th at 353; *see also Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010) ("When the BIA does not fully consider an issue . . . 'the proper course, except in rare circumstances, is to remand[.]'") (citation omitted).

## III.

In denying Perez-Perez's application for cancellation of removal, the BIA determined that Perez-Perez was no longer eligible for cancellation under § 1229b(b)(1)(D) because his qualifying child, his daughter Ady, was over twenty-one years old at the time the BIA decided the case on appeal.  The BIA did not examine the merits of the IJ's decision granting Perez-Perez's application for cancellation of removal.  The government concedes that its appeal to the BIA did not challenge Ady's status as a qualifying "child" and instead only addressed the merits

---

[2]On March 26, 2025, our court granted Perez-Perez's request for an emergency stay of removal, finding that he had a high likelihood of success on the merits and that the balance of hardships weighed in his favor.  Our court further recognized that "[a]s the Tenth Circuit has explained, it is thus at least 'reasonable' to say that the relevant time [to ascertain the age of a qualifying "child" under § 1229b(b)(1)(D)] should either be when the record closes or when the immigration judge 'ultimately rul[es] on' the application." CA6 R. 14, Order Staying Removal, at 3-4 (citation omitted).

of the IJ's finding of "extreme and unusual hardship" under § 1229b(b)(1)(D).  Perez-Perez now petitions our court for review of the BIA's order.

This case presents a pure question of law: at what point in the cancellation of removal process should courts ascertain the age of a qualifying "child" under 8 U.S.C. § 1229b(b)(1)(D)?[3]  Is it when the administrative record closes, when the IJ renders its decision, or when the BIA decides the case on appeal?  As a result, we will conduct our analysis de novo. *Singh*, 984 F.3d at 1148 ("Sometimes, appellate courts are presented with a 'purely legal' issue (e.g., what do the words of the immigration statute mean?)") (citation omitted).  Perez-Perez asserts that the relevant point in time for ascertaining the age of a qualifying "child" is either when the IJ renders its decision or when the administrative record closes.[4]  Meanwhile, DHS counters that the correct time is instead when the BIA hands down its decision on appeal. Ultimately, the parties present an issue of first impression in our circuit.

The first step we must take in determining the correct time to ascertain the age of a qualifying "child" under § 1229b(b)(1)(D) is to examine the plain meaning of the statute's text. *See Huerta v. Garland*, No. 23-3361, 2024 WL 2142068, at *2 (6th Cir. Feb. 8, 2024); *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017) (interpreting § 1101(a)(43)(A) of the INA); *see also Riley v. Bondi*, 606 U.S. 259, 266-67 (2025) (interpreting § 1252(b)(1) of the INA).  If the language is unclear, we may then examine the relevant legislative history.[5]  *Lockhart v. Napolitano*, 573 F.3d 251, 255 (6th Cir. 2009).  The relevant INA provisions at issue here, § 1229b(b)(1)(D) and § 1101(b)(1), do not explicitly state at which point in the removal cancellation process the qualifying "child" must *be* under twenty-one for their status as a "child"

---

[3]While we are typically precluded by 8 U.S.C. § 1252(a)(2)(B)(i) from reviewing discretionary relief granted under 8 U.S.C. § 1229b, we nonetheless have jurisdiction to review this appeal because it presents a question of law.  *See* 8 U.S.C. § 1252(a)(2)(D) (INA section confirming that § 1252(a)(2)(B)(i) should not be construed "as precluding review of constitutional claims or *questions of law* raised upon a petition for review filed with an appropriate court of appeals") (emphasis added).

[4]The administrative record typically closes at the conclusion of the removal hearing, when one takes place, though it may remain open if the IJ allows parties to submit further briefing.  *See* 4 C.F.R. § 28.63(a).  As a result, it is possible for the administrative record to close before the IJ issues its decision concerning an application for cancellation of removal.

[5]The legislative history of the INA "clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united."  H.R. Rep. No. 85-1199, pt. 2 (1957).

to confer cancellation eligibility to the applicant parent. *See* 8 U.S.C. §§ 1229b(b)(1)(D) (providing for cancellation of removal if the removal would cause "exceptional and extremely unusual hardship to a [noncitizen's] . . . child"), 1101(b)(1) (defining "child" as "an unmarried person under twenty-one years of age").

Despite the lack of explicit direction in the text of the INA itself, we held last year in an unpublished decision that the plain meaning of § 1229b(b)(1)(D) instructs courts to assess the age of a qualifying "child" *at the time of removal* for purposes of removal cancellation proceedings. *Huerta*, 2024 WL 2142068, at *3. Although we refrained from affirmatively answering when exactly "removal" occurs (considering either (1) at the time the IJ adjudicates a cancellation application or (2) when the noncitizen is physically removed from the United States), we ultimately concluded that because Huerta's daughter, the qualifying relative, turned twenty-one before the IJ adjudicated Huerta's cancellation application, her daughter was no longer a "child" as understood by the INA and subsequently ordered Huerta's removal. *See id.* at *3-4 (calling the time the IJ renders a decision in a removal cancellation application "the critical point of adjudication"). In a separate concurrence, Judge Nalbandian wrote that "'removal' takes effect when the immigration judge decides the case." *See id.* at *4 (Nalbandian, J., concurring) ("[T]he statute directs judges to consider hardship to the child in the present—the time of adjudication . . . . [s]o we must assess hardship at the time the court adjudicates the last step in the process—the entry of the order of removal.").

Interpreting § 1229b(b)(1)(D) to require that the age of a qualifying "child" be ascertained, at the latest, when the IJ issues its decision would harmonize with *Huerta*, and it would further accord with the plain meaning of the statute itself. *See Lockhart*, 573 F.3d at 255 (recognizing that the text of the INA must be examined to determine its plain meaning). It is our duty as an appellate court to "interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous." *Keeley v. Whitaker*, 910 F.3d 878, 884 (6th Cir. 2018). The text of § 1229b(b)(1)(D) requires the noncitizen applying for cancellation of removal to "*establish*[]" that his removal "*would result* in exceptional and extremely unusual hardship to the [noncitizen's] . . . child, who *is* a citizen of the United States[.]" 8 U.S.C. §

1229b(b)(1)(D) (emphasis added). The plain meaning of the INA therefore mandates that the qualifying child must *be* a child at the time the noncitizen's removal is adjudicated by the IJ. *See Huerta*, 2024 WL 2142068, at *3. This is because the statute instructs the IJ to make a present-tense evaluation of whether the noncitizen "*establishes*" the requisite hardship "*would* result" to the child who "*is* a citizen" *at that time* of its decision. 8 U.S.C. § 1229b(b)(1)(D) (emphasis added); *see Huerta*, 2024 WL 2142068, at *4 (Nalbandian, J., concurring); *Araujo-Padilla v. Garland*, 854 F. App'x 646, 648 n.1 (6th Cir. 2021) ("Only [Petitioner's] children who were under twenty-one at the time [of his removal hearing] counted as qualifying relatives for purposes of [§ 1229b(b)(1)(D)].").

Previously, if courts determined there was ambiguity within the INA they would defer to the BIA's reasonable interpretation of the statute.**6** However, although many previous opinions, including those in our circuit, deferred to the BIA's interpretation of the INA when evaluating the meaning of the statute's text, that deference was accorded most often under the principles announced by the Supreme Court's now-overruled *Chevron* doctrine.**7** *See generally Loper Bright*, 603 U.S. 369 (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). *Chevron* deference for BIA interpretations of the INA, including interpretations of § 1229b(b)(1)(D), was accorded in other circuits as well. *See, e.g.*, *Espinoza-Solorzano v. U.S. Att'y Gen.*, No. 20-14297, 2021 WL 5095955, at *4 (11th Cir. Nov. 2, 2021) ("Because the statute does not directly address the question [regarding § 1229b(b)(1)(D)] before us, we turn to step two of *Chevron*."); *Rangel-Fuentes v. Garland*, 99 F.4th 1191, 1192 (10th Cir. 2024) ("[W]e hold that the BIA's interpretation of § 1229b(b)(1)(D) is reasonable and entitled to deference under [*Chevron*].").

Post-*Loper Bright*, we are no longer obliged to defer to the BIA's interpretation of the INA. *See Loper Bright*, 603 U.S. at 400-01 ("[A]gencies have no special competence in

---

**6**It is worth emphasizing that the need to defer to the BIA's interpretation of the INA only arose if the court found that the statute's language was ambiguous. *See Hernandez v. Whitaker*, 914 F.3d 430, 433 (6th Cir. 2019).

**7***See, e.g.*, *Arangure v. Whitaker*, 911 F.3d 333, 338 (6th Cir. 2018) ("The Board is eligible for *Chevron* deference when it interprets the INA."); *Martial-Emanuel v. Holder*, 523 F. App'x 345, 351 (6th Cir. 2013) ("When reviewing the BIA's interpretation of ambiguous terms in the Immigration and Nationality Act, we apply *Chevron* deference[.]"); *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907 (6th Cir. 2008) ("The Supreme Court has held that *Chevron* deference to the Board's interpretation of immigration statutes is appropriate.").

resolving statutory ambiguities. Courts do."); *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024) (withholding deference to the BIA's interpretation of § 1229b(b)(1)(D) following *Loper Bright*). In fact, the Tenth Circuit vacated and ordered a rehearing in light of the Supreme Court's ruling in *Loper Bright* in a case addressing a very similar issue to that presented by Perez-Perez's appeal. *See Rangel-Fuentes v. Garland*, No. 23-9511, 2024 WL 3405079, at *1 (10th Cir. July 10, 2024). And the Eleventh Circuit, holding that § 1229b(b)(1)(D) requires that a "child" qualify at the time the IJ issues its "final decision," withheld deference to the BIA's interpretation of § 1229b(b)(1)(D) in accordance with *Loper Bright*.[8] *See Diaz-Arellano v. U.S. Att'y Gen.*, 120 F.4th 722, 725 (11th Cir. 2024). Without express language in § 1229b(b)(1)(D) "vesting" the BIA with discretion to determine the meaning of a qualifying "child," we do not need to afford deference to the BIA's interpretation. *See Moctezuma-Reyes*, 124 F.4th at 420 (confirming that § 1229b(b)(1)(D) contains no such "vesting" language).

We see no such vesting language here and therefore find that we are empowered to interpret § 1229b(b)(1)(D) without regard to the BIA's prior interpretation. *See id.* And reading § 1229b(b)(1)(D) to require that the qualifying child's age be ascertained at the time the IJ renders its decision would align with our circuit's previous opinions on this issue, as well as decisions released by other circuits concerning the same question. *See, e.g.*, *Huerta*, 2024 WL 2142068, at *2; *Araujo-Padilla*, 854 F. App'x at 648 n.1; *see also, e.g.*, *Espinoza-Solorzano*, 2021 WL 5095955, at *5 ("To be considered a child and thus a qualifying relative, [Espinoza-Solorzano's daughter] needed to be under 21 years old at the time the IJ adjudicated her father's application[.]"); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1007 (9th Cir. 2025) (finding that Gonzalez-Juarez's two sons qualified as children for purposes of § 1229b(b)(1)(D) because they were under twenty-one at the time of the IJ's decision); *Crew v. Att'y Gen. of U.S.*, 396 F. App'x 889, 890-91 (3d Cir. 2010) (concluding that Crew's daughter was not a "child" for purposes of

---

[8]The dissent reasons "the final decision on cancellation of removal is made" when the BIA enters its decision. Dissenting Op. at 12-13 (quoting *Diaz-Arellano*, 120 F.4th at 725). In support, the dissent cites to "[n]eighboring statutory provisions" addressing orders of deportation and the point at which the "removal period"— the period when the Attorney General must remove a noncitizen who was ordered removed—begins to run. *Id.* (citing 8 U.S.C. §§ 1101(a)(47)(B), 1231(a)(1)(B)). In this case, though, the IJ did not order removal; rather, the IJ granted cancellation of removal. Because those statutes are therefore inapplicable, we decline to adopt this reasoning. *See also Huerta*, 2024 WL 2142068, at *4 (Nalbandian, J., concurring) ("I am thus not convinced that mention of 'final adjudication' in a related part of the U.S. Code defeats the most natural reading of the text at issue.").

cancellation of removal because she was thirty-five on the date of the IJ's hearing); *Valerio-Lopez v. Garland*, 861 F. App'x 178, 179 (10th Cir. 2021) (recognizing an IJ's finding that Valerio-Lopez's children did not qualify under § 1229b(b)(1)(D) because they turned twenty-one prior to the IJ's removal hearing).

We acknowledge, and the dissent appropriately points out, that there are some cases that reach the opposite result from our holding here. *See, e.g.*, *Pina v. U.S. Att'y Gen.*, No. 24-12590, 2025 WL 1216719, at *3 (11th Cir. Apr. 28, 2025); *Baltazar-Felipe v. U.S. Att'y Gen.*, No. 22-13188, 2023 WL 3961411, at *2 (11th Cir. June 13, 2023); *Garcia Hernandez v. Bondi*, No. 23-2006, 2025 WL 2399968, at *1 (9th Cir. Aug. 19, 2025). However, we believe most of these cases are either factually distinguishable or rely on conflicting legal analysis. For example, *Garcia Hernandez*, a Ninth Circuit case finding that the petitioner's son did not qualify under § 1229b(b)(1)(D) because he was twenty-two when the BIA issued its decision, concerned review of a motion to reopen the petitioner's removal proceedings, not an application for cancellation of removal. *See* 2025 WL 2399968, at *1.**9** In *Pina v. U.S. Att'y Gen.*, a panel for the Eleventh Circuit, relying on its previous decision in *Diaz-Arellano*, held that "because [petitioners' daughter] was no longer under 21 at the time the BIA rendered its final decision" they were "no longer eligible for cancellation of removal." 2025 WL 1216719, at *3. However, *Diaz-Arellano* stated that § 1229b(b)(1)(D) explicitly requires that the age of a qualifying "child" be ascertained "when the immigration court finalizes its decision on the application for cancellation of removal." 120 F.4 at 725. The *Diaz-Arellano* panel subsequently recognized that because Diaz-Arellano's child was over twenty-one at the time the IJ adjudicated the case, the child did not qualify under § 1229b(b)(1)(D). *See id.*

As stated previously, for applications for cancellation of removal, we believe the time to ascertain when a noncitizen "establishes" the age of a "child" under § 1229b(b)(1)(D) is the date of the IJ adjudication. *See also Mendez-Garcia v. Lynch Gonzales*, 840 F.3d 655, 666 (9th Cir. 2016) (affirming that the qualifying child must be under twenty-one at the time the IJ adjudicates

---

**9***See also Yupangui-Yunga v. Bondi*, No. 23-6522, 2025 WL 2989588, at *7 (2d Cir. Oct. 24, 2025) (involving a motion to reopen removal proceedings after the BIA dismissed the petitioner's appeal of the IJ's denial of removal cancellation and misstating the holdings of *Diaz-Arellano* and *Rangel-Fuentes*).

the noncitizen's removal cancellation application); *Rangel-Fuentes v. Bondi*, 155 F.4th 1138, 1145 (10th Cir. 2025) (after rehearing post-*Loper*, finding that § 1229b(b)(1)(D) "contemplates assessing a qualifying child's age when the immigration judge issues a decision").

Ascertaining the age of a qualifying child under § 1229b(b)(1)(D), at the latest, when the IJ issues a decision also aligns with authoritative precedent from the BIA on this issue. In *Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829 (B.I.A. 2012), the BIA held that an applicant "who loses his qualifying relationship before his application is even adjudicated on its merits by the Immigration Judge" cannot retain his eligibility for purposes of removal cancellation. *Id.* at 831. Just like the petitioner in *Huerta*, the petitioner in *Isidro-Zamorano* based his cancellation application on a qualifying relative who turned twenty-one prior to the issuance of the IJ's decision. Although the BIA recognized in *Isidro-Zamorano*, and as DHS emphasizes in its brief, that relief from removal is a "continuing" application, the BIA nonetheless determined that the relevant point in time to end that forward-looking inquiry occurred when the IJ issued its decision. *See id.* at 830-31. Applying the logic of *Isidro-Zamorano* to Perez-Perez's case, we find additional support that a qualifying child's age is properly considered at the time the IJ issues its decision. *See also Matter of Portillo-Gutierrez*, 25 I. & N. Dec. 148, 149 (B.I.A. 2009) (affirming that a "child" under the INA qualifies at the time the IJ adjudicates an application for cancellation of removal).

The BIA's decision, as well as the parties' briefs, also cite *Matter of Bautista Gomez*, 23 I. & N. Dec. 893 (B.I.A. 2006), in support of their respective arguments. However, *Matter of Bautista Gomez* is inapposite here because that case concerned a noncitizen becoming *eligible* for cancellation of removal during the removal cancellation process, rather than a noncitizen becoming *ineligible*. *See Isidro-Zamorano v. Holder*, 365 F. App'x 846, 847 (9th Cir. 2010) (finding that *Matter of Bautista Gomez* "is not determinative" and "does not control" in cases where a noncitizen becomes ineligible, rather than eligible, during the adjudication of his removal cancellation application). *Matter of Bautista Gomez* also necessarily addressed a different question than that presented by Perez-Perez's appeal. 23 I. & N. Dec. at 894-95 (addressing whether a family member who becomes a qualifying relative after an IJ adjudicates an application for cancellation of removal can re-confer the ability for a petitioner to cancel their

removal). Because this case concerns Perez-Perez becoming ineligible after the IJ adjudicated his application for cancellation of removal, we do not find that the logic of *Matter of Bautista Gomez* transfers to Perez-Perez's case. *See Isidro-Zamorano v. Holder*, 365 F. App'x at 847.

****

Both parties also raised the issue of whether an "undue or unfair delay" exception exists to excuse petitioners seeking cancellation of removal whose children "age out" during the pendency of an appeal challenging a grant of cancellation. Because we now reverse the BIA's interpretation of § 1229b(b)(1)(D) and find that the age of Perez-Perez's qualifying child was properly ascertained at the time of the IJ's decision, we decline to reach the question concerning the existence of an undue or unfair delay exception. We need not engage in this analysis to properly resolve Perez-Perez's petition for review.

Moreover, we note that the BIA did not make an explicit finding as to whether an unfair or undue delay occurred in DHS's appeal of the IJ's decision granting Perez-Perez cancellation of removal. And "when the BIA does not fully consider an issue . . . a reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed." *Bi Xia Qu*, 618 F.3d at 609 (quoting *Gonzalez v. Thomas*, 547 U.S. 183, 186 (2006)) (citation modified). Thus, we further recognize that addressing this issue falls outside our scope of review.

### IV.

For the foregoing reasons, we grant Perez-Perez's petition for review and reverse the BIA's order finding that Ady Perez-Velasquez no longer qualified as a "child" under the INA because she was over twenty-one at the time of the BIA's decision. Instead, we conclude that the proper moment to ascertain the age of a qualifying "child" on an application for cancellation of removal under § 1229b(b)(1)(D) is at the time the IJ renders its decision. Accordingly, we remand to the BIA for further proceedings consistent with this decision.

---

**DISSENT**

---

McKEAGUE, Circuit Judge, dissenting.  I agree with the majority that to qualify for cancellation of removal an applicant must have a child under the age of twenty-one at the time of removal.  Although Perez-Perez satisfied that statutory requirement when an immigration judge ("IJ") initially granted his application, his qualifying daughter turned twenty-one while an appeal of that decision was pending before the Board of Immigration Appeals ("BIA").  The majority concludes that Perez-Perez still qualifies for cancellation of removal by fixing the age of his daughter at the time of the IJ's decision.  But the text of 8 U.S.C. § 1229b(b)(1)(D), cases applying that provision, and Congress's purpose in enacting the cancellation of removal statute lead me to a different conclusion: the age of a qualifying child should be measured at the time of the final administrative decision on an application for cancellation of removal, which in this case was the decision of the BIA.

Start with the statute's text.  The INA allows an applicant like Perez-Perez to seek cancellation of removal if, among other requirements, he "establishes that removal would result in exceptional and extremely unusual hardship to [his] . . . child."  8 U.S.C. § 1229b(b)(1)(D).  And, as the statute tells us, a child is "an unmarried person under twenty-one years of age."  8 U.S.C. § 1101(b)(1).

According to "the plain meaning of the text" the question is whether "removal would result in hardship."  *Huerta v. Garland*, No. 23-3361, 2024 WL 2142068, at *3 (6th Cir. Feb. 8, 2024) (citation modified), *cert. denied*, 145 S. Ct. 566 (2024).  And, "we must assess hardship at the time of removal—because that is when the hardship would result—not during the pendency of the request to cancel removal."  *Id.* (citing *Baltazar-Felipe v. U.S. Att'y Gen.*, No. 22-13188, 2023 WL 3961411, at *2 (11th Cir. June 13, 2023)); *Yupangui-Yunga v. Bondi*, No. 23-6522, ___ F.4th ___, 2025 WL 2989588, at *7 (2d Cir. Oct. 24, 2025) ("[R]emoval must *cause* a particular kind of hardship—a hardship that will arise only upon an applicant's removal—to a person *who at the time of removal* has all the attributes . . . of a qualifying relative.").

Putting those pieces together, "[t]he statute deals with facts on the ground at the time of removal—it does not require immigration judges to pretend hardships still exist that plainly do not by the time the application is adjudicated." *Diaz-Arellano v. U.S. Att'y Gen.*, 120 F.4th 722, 726 (11th Cir. 2024). So, when "an applicant is proceeding based on exceptional hardship to a child" the statute requires "that there must be a child—an unmarried person under the age of twenty-one—when the final decision on cancellation of removal is made." *Id.* at 725; *Baltazar-Felipe*, 2023 WL 3961411, at *2 ("[T]he plain language of the statute indicates that the relative must be a child—that is, under 21 years of age and unmarried—when the hardship of removal occurs, which can only be after the final adjudication of the application for cancellation of removal."). There was no final administrative adjudication of Perez-Perez's case until the BIA resolved his application for cancellation of removal. *See* Oral. Arg. at 8:45-8:51 (Perez-Perez's counsel indicating that "there was no final order of deportation until the BIA acted"). And, at that point, because Perez-Perez's daughter was over the age of twenty-one, he no longer satisfied the statutory requirements of §1229b(b)(1).[1]

Neighboring statutory provisions support the conclusion that removal cannot occur until an application for cancellation of removal has been finally adjudicated. *See* 8 U.S.C. § 1101(a)(47)(B) (establishing that an order of deportation is "final upon the earlier of . . . a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals");[2] 8 U.S.C § 1231(a)(1)(B) (establishing, in relevant part, that the "removal period begins on . . . [t]he date the order of removal becomes administratively final"). So, as I see it, in cases where no appeal is taken or an appeal is waived, an IJ's decision would constitute a final administrative order. But in this context—when the IJ's order is appealed—the

---

[1]One additional point on the statutory language. *Huerta* noted a potential ambiguity as to whether removal refers to the point in time when an order of removal is issued or when the process of removal is effectuated. 2024 WL 2142068, at *3; *cf. id.* at *4 (Nalbandian, J., concurring) ("[W]e must assess hardship at the time the court adjudicates the last step in the process—the entry of the order of removal."). Just as in *Huerta*, however, that issue does not impact the outcome here. If a child ages out before final administrative adjudication, the child is necessarily too old to satisfy the statutory requirements at all subsequent stages of the removal process.

[2]Although § 1101(a)(47) references an order of deportation and not an order of removal, in this context, those terms are treated alike. *See Riley v. Bondi*, 606 U.S. 259, 267 (2025).

BIA decision constitutes the final agency decision.  And Perez-Perez could not be removed until that decision was in place.

Faced with similar facts, the Eleventh Circuit has measured a qualifying child's age at the time of the BIA's decision.  In *Pina v. U.S. Att'y Gen.*, for example, an IJ denied applications for cancellation of removal because the petitioners had not demonstrated that their child—who was under twenty-one years old at the time—would face exceptional or extremely unusual hardship if they were removed.  No. 24-12590, 2025 WL 1216719, at *1 (11th Cir. Apr. 28, 2025), *cert. denied*, 2025 WL 3198595.  The petitioners appealed, but because of various delays, their qualifying child aged-out while the administrative appeal was pending, so the BIA dismissed the appeal.  *Id.* at *2.  The Eleventh Circuit denied the petition for review, holding that "because [petitioners' child] was no longer under 21 at the time the BIA rendered its final decision, the [p]etitioners were no longer eligible for cancellation of removal."  *Id.* at *3 (citing *Diaz-Arellano*, 120 F.4th at 725-26).

Much the same in *Baltazar-Felipe*, the petitioner argued that the BIA erred in concluding that a child who turned twenty-one years old after the IJ's decision but before the BIA's could not be considered in a cancellation of removal analysis.  2023 WL 3961411, at *1.  Rejecting that argument, the Eleventh Circuit recognized that "the plain language of the statute indicates that the relative must be a child—that is, under 21 years of age and unmarried—when the hardship of removal occurs, which can only be after the final adjudication of the application for cancellation of removal;" in that case, the BIA's decision.  *Id*. at *2.

Cases from other circuits in the reopening context point in the same direction.  *See, e.g.*, *Yupangui-Yunga*, 2025 WL 2989588, at *7 (2d Cir. Oct. 24, 2025) (finding that petitioner's "removal no longer 'would result' in hardship to a qualifying relative" when petitioner's daughter turned twenty-one while motion to reopen was pending before BIA); *Garcia Hernandez v. Bondi*, No. 23-2006, 2025 WL 2399968, at *1 (9th Cir. Aug. 19, 2025) (finding that "a child must be under 21 to qualify . . . and [petitioner's] son was 22 years old when the BIA made its decision").  As do cases decided after *Loper Bright Enters. v. Raimondo*, even if they do not explicitly address deference issues.  *See Cervantes Mejia v. Bondi*, No. 23-1735, 2025 WL 1201391, at *1 (9th Cir. Apr. 25, 2025) ("By the time that the BIA adjudicated [the petitioner's]

appeal, his daughter [] was no longer a qualifying relative under 8 U.S.C. §§ 1101(b)(1) and 1229b(b)(1)(D)."); *Dominguez-Montoya v. Garland*, No. 23-1277, 2024 WL 4224905, at *1 (9th Cir. Sept. 18, 2024) ("A qualifying relative is required for cancellation of removal . . . and thus the BIA properly stated that the Petitioner needed to maintain a qualifying relative until the application [was] finally resolved by an Immigration Judge or the Board. Petitioner's qualifying relative—his daughter—turned twenty-one years old during the pendency of the appeal. Given this, the BIA properly denied Petitioner's application for cancellation because he no longer had a qualifying relative." (citation modified)).

And, although we no longer defer to the BIA, its decisions lend further support. *See, e.g.*, *Matter of Bautista Gomez*, 23 I. & N. Dec. 893, 894 (BIA 2006) ("[W]e find that the issue of qualifying relatives should properly be considered as of the time an application for cancellation of removal is finally decided." (citing *Matter of Ortega-Cabrera*, 23 I. & N. Dec. 793 (BIA 2005))); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) and recognizing that courts may "seek aid from the interpretations of those responsible for implementing particular statutes").

In splitting from that line of authority, the majority and Perez-Perez point to cases focused on a qualifying child's age at the time of an IJ's decision. *See, e.g.*, *Rangel-Fuentes v. Bondi*, 155 F.4th 1138, 1144-45 (10th Cir. 2025); *Huerta*, 2024 WL 2142068, at *2-3; *Diaz-Arellano*, 120 F.4th at 725-26; *Espinoza-Solorzano v. U.S. Att'y Gen.*, No. 20-14297, 2021 WL 5095955, at *5 (11th Cir. Nov. 2, 2021); *Valerio-Lopez v. Garland*, 861 F. App'x 178, 179 (10th Cir. 2021); *Araujo-Padilla v. Garland*, 854 F. App'x 646, 648 n.1 (6th Cir. 2021); *Mendez-Garcia v. Lynch*, 840 F.3d 655, 664 (9th Cir. 2016); *Matter of Isidro*, 25 I & N Dec. 829, 830-31 (BIA 2012); *Crew v. Att'y Gen. of U.S.*, 396 F. App'x 889, 890-91 (3d Cir. 2010). Yet, in each of those cases, the petitioners' children turned twenty-one prior to the IJ's decision. *Rangel-Fuentes*, 155 F.4th at 1141-42; *Huerta*, 2024 WL 2142068, at *2-3; *Diaz-Arellano*, 120 F.4th at 724; *Espinoza-Solorzano*, 2021 WL 5095955, at *1; *Valerio-Lopez*, 861 F. App'x at 179; *Araujo-Padilla*, 854 F. App'x at 648 n.1; *Mendez-Garcia*, 840 F.3d at 661-62; *Matter of Isidro*, 25 I & N Dec. at 830; *Crew*, 396 F. App'x at 890-91. As a result, it was enough for those courts

to say that a child who turned twenty-one before the IJ's decision was not a qualifying relative. In other words, they point to the IJ decision because that is what the facts demanded.

But I do not read those decisions as necessarily fixing a qualifying child's age at the time of an IJ's decision. Instead, each applies the general rule applicable here: a qualifying child's age should be continually evaluated until an application for cancellation of removal is finally adjudicated by the agency. And I am not alone in that reading. Recall, for example, *Pina*, which involved a qualifying child aging out while a BIA appeal was pending. 2025 WL 1216719, at *3. There, the Eleventh Circuit determined that the petitioner's claim was "squarely foreclose[d]" by *Diaz-Arellano*—even though *Diaz-Arellano* involved a child who aged out prior to the IJ's decision. *Id.*; *Yupangui-Yunga*, 2025 WL 2989588, at *7 (agreeing with and relying on *Rangel-Fuentes* and *Diaz-Arellano*); *Garcia Hernandez*, 2025 WL 2399968, at *1 (relying on *Mendez-Garcia*). Moreover, even cases keying in on the IJ's decision employ broader language. *See, e.g.*, *Huerta*, 2024 WL 2142068, at *3 ("The statute is thus not ambiguous about whether [the petitioner's] daughter is a 'child' at the critical point of adjudication."); *Diaz-Arellano*, 120 F.4th at 725 ("[T]here must be a child—an unmarried person under the age of twenty-one—when the final decision on cancellation of removal is made."). Here, there was no final decision on cancellation of removal until the BIA adjudicated Perez-Perez's application. Neither Perez-Perez nor the majority point to any contrary authority with facts like those we confront here—a qualifying child aging out during the pendency of a BIA appeal.

To be sure, § 1229b(b)(1)(D) disadvantages applicants like Perez-Perez who lose qualifying relatives while their cancellation application is being adjudicated. But "the procedural delay [] had the effect of assuring there will be no exceptional hardship to a qualifying relative." *Yupangui-Yunga*, 2025 WL 2989588, at *7. While that outcome is no doubt harsh, "[t]o the extent [] § 1229b is designed to mitigate harm to minor children that would flow from a parent's removal, such mitigation ran its course in this case as a consequence of the BIA's processing times," and I am not convinced the statute's purpose is undercut when a child ages out while the BIA considers a cancellation application. *Id.* at *9. Indeed, "the applicant is really only a subsidiary beneficiary of the statute's protections, which are designed to safeguard the child." *Diaz-Arellano*, 120 F.4th at 726 n.4. So, at bottom, when an applicant "only has adult children

once his removal occurs," as would be the case here, "that removal does not cause exceptional hardship to any qualifying child." *Id.* at 725-26.  If Congress wants to fix the time of a child's age at an earlier point, it can.  Indeed, Congress "has been explicit when it has intended to adopt a policy freezing a child's age for purposes of applying an immigration provision." *Id.* at 726 (citing, for example, the Child Status Protection Act of 2002, Pub. L. No. 107-208, 116 Stat. 927).  Absent any such limiting language here, I would ask whether an applicant has a qualifying relative at the time of removal, which cannot occur before an application for cancellation of removal is finally adjudicated.

Even still, Perez-Perez argues that he should benefit from an equitable exception to the statute given the length of time it took the BIA to adjudicate his appeal.  Pet. Br. at 14-16.  But the BIA never considered this argument and "any issues the Board did not address are not before the court." *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023); *Precetaj v. Sessions*, 907 F.3d 453, 460 (6th Cir. 2018) ("We are not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." (citation modified)); *Cruz v. Garland*, No. 23-6231, 2024 WL 1460131, at *2-3 (2d Cir. Apr. 4, 2024).  And my colleagues conclude that a qualifying child's age should be fixed at the time of an IJ's decision.  As a result, I leave for another day the issue of whether undue delay in the adjudication of Perez-Perez's cancellation application compels remand.  I do question, however, whether § 1229b(b)(1) permits an equitable exception, even where there is undue delay.  *See Pina*, 2025 WL 1216719, at *3 ("Petitioners have cited no authority for an equitable exception to the cancellation of removal statute based on an alleged undue delay in the removal proceedings"); *Diaz-Arellano*, 120 F.4th at 727 (expressing skepticism as to the existence of an undue delay exception, noting that petitioner "cite[d] no authority at all for this exception in the statute's text").

The majority seeing things differently, I respectfully dissent.